1  **MAYALL HURLEY P.C.**
   **ROBERT J. WASSERMANN (SBN: 258538)**
2  rwassermann@mayallaw.com
   **VLADIMIR J. KOZINA (SBN: 284645)**
3  vjkozina@mayallaw.com
   **2453 Grand Canal Boulevard**
4  **Stockton, California 95207-8253**
   **Telephone: (209) 477-3833**
5  **Facsimile: (209) 473-4818**
   **Website: www.mayallaw.com**
6
7  **ACKERMANN & TILAJEF, P.C.**
   **Craig J. Ackermann (SBN: 229832)**
8  cja@ackermanntilajef.com
   **1180 South Beverly Drive, Suite 610**
9  **Los Angeles, CA 90035**
   **Telephone: (310) 277-0614**
10 **Facsimile: (310) 277-0635**
11
12 **Attorneys for Plaintiff Justin Titus and the Putative Class**

13                 **UNITED STATES DISTRICT COURT**

14                **EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15 **JUSTIN TITUS, an individual,** | **Case No.: 2:17-cv-00558-JAM-GGH** |
| 16     **Plaintiff,** | **CLASS AND REPRESENTATIVE ACTION** |
| 17 **vs.** | **1. FAILURE TO PAY OVERTIME** |
| 18 | **2. FAILURE TO PROVIDE REST** |
| **OAK HARBOR FREIGHT LINES, INC.;** | **3. FAILURE TO PROVIDE MEAL BREAKS** |
| 19 **and DOES 1-100, inclusive,** | **4. FAILURE TO PAY SICK LEAVE AT** |
| 20     **Defendants.** |     **CORRECT RATE** |
| | **5. FAILURE TO FURNISH ACCURATE** |
| 21 |     **ITEMIZED WAGE STATEMENTS** |
| 22 | **6. FAILURE TO PAY SEPARATELY AND** |
| |     **HOURLY FOR TIME SPENT ON NON-** |
| 23 |     **DRIVING TASKS** |
| | **7. FAILURE TO PAY MINIMUM WAGE** |
| 24 | **8. FAILURE TO TIMELY PAY WAGES** |
| | **9. VIOLATION OF BUSINESS AND** |
| 25 |     **PROFESSIONS CODE SECTION 17200** |
| 26 | **10. PRIVAT ATTORNEYS GENERAL ACT** |
| 27 |     **JURY TRIAL DEMANDED** |
| 28 | |

Plaintiff Justin Titus brings this Class Action against Oak Harbor Freight Lines, Inc. and Does 1 through 100, for violations of the California Labor Code and Business and Professions Code.

## PARTIES

1.      Justin Titus ("Titus" or "Plaintiff") is and at all times relevant herein was employed in San Joaquin County, California, and was an "employee" for purposes of the California Labor Code and IWC Wage Order No. 9.

2.      The Oak Harbor Freight Lines, Inc. ("OHFL") is a Delaware Corporation and, at all times relevant herein, was an "employer" as defined by the Fair Labor Standards Act, the California Labor Code, and the applicable IWC Order(s).

3.      OHFL and Does 1-100 are collectively referred to as Defendants.

4.      Plaintiff is not aware of the true names and capacities of the Defendants sued herein as Does 1 through 100, whether individual, corporate, associate, or otherwise and therefore sues such Defendants by these fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.   Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries and damages herein alleged were legally caused by such Defendants.  Unless otherwise indicated, each Defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-Defendant.

5.      Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, each of the Defendants, including each Doe Defendant, was acting as the agent, servant, employee, partner and/or joint venturer of and was acting in concert with each of the remaining Defendants, including each Doe Defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action.  Each Defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining Defendants.

/ / /

/ / /

## JURISDICTION AND VENUE

6.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because the unlawful acts alleged herein took place in San Joaquin and Plaintiff's place of employment with Defendants was within this District.  Plaintiff hereby demands a jury trial.

## GENERAL ALLEGATIONS

7.    Titus was hired by OHFL on October 5, 2020.

8.    Titus was initially hired as a non-exempt employee and assigned the position of P&D, or Pickup & Delivery Driver.

9.    Titus' job duties included, but were not limited to, loading and unloading trailers, dock work, hostling (i.e., shuffling trailers within OHFL's yard), and driving tractors to and from service yards.

10.    Titus and OHFL's other non-exempt California employees were entitled to be paid for every hour worked and to receive overtime and meal and rest breaks in accordance with California law.

11.    Titus and OHFL's other non-exempt California employees were also eligible for and at times receive non-discretionary bonuses, commissions, and other items of compensation (including, but not limited to, "Bonus", paid when companywide goals were met, and "Sign On Bonus", paid in chunks based on duration of employment).  **Exhibits 1, 3, 5**. [1]

12.    Throughout his employment, however, OHFL's failed to properly calculate and pay the overtime wages owed to Titus and its other non-exempt California employees.

13.    Specifically, pursuant to its uniform policy, practice and procedure, OHFL failed to include commissions, non-discretionary bonuses and other items of compensation when determining Titus and its other non-exempt California employees' "regular rate of pay" for purposes of overtime. Instead, OHFL had a uniform policy, pattern, and practice of only paying 1 ½ times (or 2 times, as appropriate) the employee's base hourly rate for overtime hours worked.

---

[1] Exhibits **1-6** are incorporated by this reference as though fully set forth herein.  Some Exhibits have been reduced and/or redacted due to their size and content.

14. For example, during the pay period of December 1, 2020 through December 15, 2020, Titus received a "Bonus" of $250.00. See **Exhibit 1**. Pursuant to its uniform policy and practice, OHFL failed to include Titus' $250 "Bonus" when calculating his regular rate of pay. Instead, OHFL utilized only Titus' base hourly rate and multiplied it by 1.5 to obtain the overtime rate of $37.125, and thus underpaid him for overtime hours worked. See **Exhibit 2**.

15. Similarly, during the pay period of July 16, 2021 through July 31, 2021, Titus received a "Bonus" of $250.00. See **Exhibit 3**. Pursuant to its uniform policy and practice, OHFL failed to include Titus' $250 "Bonus" when calculating his regular rate of pay. Instead, OHFL utilized only Titus' base hourly rate and multiplied it by 1.5 to obtain the overtime rate of $39.885, and thus underpaid him for overtime hours worked. See **Exhibit 4**.

16. Moreover, during the pay period of October 1, 2021 through October 15, 2021, Titus received a "Bonus" of $20.00. See **Exhibit 5**. Pursuant to its uniform policy and practice, OHFL failed to include Titus' $200 "Bonus" when calculating his regular rate of pay. Instead, OHFL utilized only Titus' base hourly rate and multiplied it by 1.5 to obtain the overtime rate of $39.885, and thus underpaid him for overtime hours worked. See **Exhibit 6**.

17. OHFL also fails to include commissions, non-discretionary bonuses, and other items of compensation when determining its non-exempt California employees' regular rate of pay for purposes of sick leave. See **Exhibits 7** and **4**.

18. Titus and OHFL's other non-exempt California employees were not consistently authorized or permitted to take meal breaks as required by California law.

19. OHFL frequently required Titus and its other non-exempt California employees to work through meal breaks due to understaffing and work demands.

20. On the occasions that Titus and OHFL's other non-exempt California employees were able to take their meal breaks, they routinely occurred after 5 hours of work.

21. Further, OHFL frequently failed to relieve Titus and its other non-exempt California employees of employer control during their meal breaks.

22. Titus and OHFL's other non-exempt California employees also were not consistently authorized or permitted to take rest breaks as required by California law.

23.     OHFL frequently required Titus and its other non-exempt California employees to work through rest breaks due to understaffing and work demands.

24.     Further, OHFL frequently failed to relieve Titus and its other non-exempt California employees of employer control during their rest breaks.

25.     When Titus and OHFL's other non-exempt California employees were not provided compliant meal and rest breaks, OHFL routinely did not pay premiums as required by California law.

26.     Specifically, OHFL would either (a) fail to pay any premium whatsoever or (b) would pay the premium at the employee's base rate of pay without taking non-discretionary bonuses, commissions, and other items of compensation into account.

27.     On occasion, Titus and OHFL's other non-exempt employees would be asked to haul freight after they had completed their yard duties.

28.     This practice often resulted in Titus and OHFL's other non-exempt employees working far in excess of 8 hours in a day and/or 40 hours in a week.

29.     Notwithstanding the foregoing, and depending upon which benefited OHFL the most, OHFL would either (a) pay them by the mile or (b) pay them by the hour.

30.     This practice resulted in Titus and OHFL's other non-exempt employees being denied overtime and underpaid.

31.     In or about January 2021, Titus became a Line Driver.

32.     OHFL's California Drivers are paid on piece-rate basis.

33.     Although OHFL's California Drivers receive some pay for non-driving tasks, it is often insufficient to compensate them for all time spent attending to such tasks.

34.     For example, OHFL's California Drivers were allowed certain pay codes for hooking and unhooking trailers.  One such commonly used code, provided pay for only 7.5 minutes.

35.     7.5 minutes is not enough time to completely hook or unhook a trailer.

36.     Drivers who logged more than one code for hooking / unhooking would get in trouble.

37.     Eventually OHFL limited application of the code and its California Drivers could no longer clock any additional time for hooking and unhooking resulting in significant underpaid wages.

38.     Under OHFL's uniform compensation system, and in violation of Labor Code section 226.2(a)(2), the itemized wage statements furnished to OHFL's California Drivers accurately failed to separately state the total hours of other nonproductive time, the rate of compensation, and the gross wages paid for that time during the pay period.  See samples of Titus' wage statement attached as **Exhibits 2**, **4**, and **6**.

39.     Additionally, because Titus and OHFL's California Drivers frequently transported hazardous materials their work is governed by the Federal Hazardous Materials Act, 49 U.S.C. §§ 5103 et seq., which specifies that when vehicles containing hazardous materials are on the road, the vehicle "must be attended at all times by its driver or a qualified representative of the motor carrier that operates it." (49 C.F.R. § 397.59(a)).  These regulations also specify that a motor vehicle is attended when the person in charge of the vehicle is on the vehicle, awake, and not in the sleeper berth, or is within 100 feet of the vehicle has it within his/her unobstructed field of view. (49 C.F.R. § 397.5(d)).  Further these regulations specify that they apply to each motor carrier engaged in the transportation of hazardous materials by a motor vehicle which must be marked or placarded in accordance with § 177.823 of Title 49 governing transportation, each officer or employee of the motor carrier who performs supervisory duties related to the transportation of hazardous materials, and each person who operates or is in charge of a motor vehicle containing hazardous materials. (49 U.S.C. § 397.1(a)).

40.     Although Titus and OHFL's other California Drivers were required to always attend to their vehicles, including during their thirty-minute DOT-required meal periods, OHFL failed to compensate Titus and its California Drivers for such on-duty time. Instead, OHFL deducted thirty minutes of pay each day and/or did not pay for meal breaks, specifically advising drivers that their DOT meal breaks would be unpaid despite their having to attend to their vehicles at all times, and remain within 100 feet of the vehicle with their eyes on it at all times, including during their unpaid DOT lunch break.

41.     However, under California law, employees must be paid for all "hours worked." "Hours worked" is considered "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not

required to do so…." *See* Wage Order 9-2001, subd. 2(H); *see also Mendiola v. CPS Security Solutions, Inc.,* 60 Cal.4th 833 (2015). "[I]t is only necessary that the worker be subject to the control of the employer in order to be entitled to compensation." *Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 584 (2000) (internal citations omitted). An employee is under the employer's control and entitled to compensation when the employer "'directs, commands or restrains' an employee." *Morillion,* 22 Cal.4th at 583 (internal citation omitted).

42.     As the California Supreme Court made clear in *Morillion*, when determining whether an employee's activity is under the employer's control entitling him or her to compensation, the touchstone is not whether the employer requires the activity and thus whether employees can avoid it, but the level of control employers exert over employees during the activity: "The level of the employer's control over its employees, *rather than the mere fact that the employer requires the employees' activity, is determinative.*" *Morillion,* 22 Cal.4th at 587 (emphasis added).

43.     To be free of the employer's control for purposes of "hours worked," the employee must be free to use his or her time "effectively for his or her own purposes." *Morillion,* 22 Cal.4th at 583.

44.     Here, Titus and OHFL's other California Drivers could not leave their trucks unattended without necessarily violating federal safety regulations, potentially resulting in citations, penalties, etc., and without violating OHFL's policies requiring Hazmat drivers to comply with these federal regulations. Specifically, Titus and OHFL's other California Drivers were required by OHFL and federal regulations to be within 100 feet of their tanker trucks at all times.  Additionally, a truck left unattended could potentially subject OHFL to loss of product and liability to the employee and/or third parties for damages resulting from explosions or leaks of hazardous materials.  As such, OHFL exercised compensable control over the Titus and its other California Drivers during meal periods, by requiring them to never leave their tanker trucks unattended and outside of their field of vision, and owe wages to Titus and its other California Drivers for this compensable time. *See*, *Meza v. Pacific Bell Telephone Company*, Court of Appeal of California, Second Appellate District, Division Three, Case No. B317119 (June 17, 2022) (concluding that the trial court erred in denying class certification in a case where an employer's policies were unlawful because the policies substantially limited the

activities of employees during meal or rest periods, even when witnesses testified that the various written guidelines were applied in diverse ways in practice).

45.    The California Department of Industrial Relations ("DIR") has previously issued guidance regarding this very issue. *See* DLSE letter Re: Meal Periods for Fuel Carriers Subject to Federal Safety Regulations (June 9, 2009), available at https://www.dir.ca.gov/dlse/opinions/2009-06-09.pdf. The DLSE's letter states, in relevant part:

> You present the question whether the Division's position is the same if the employees' ability to be free to take an off-duty meal period is restricted by the federal regulation governing the transportation of hazardous materials, and not simply by the employer. Under the facts presented here, ***the answer is yes***. Wage Order 9-2001, subd. 11(C) expressly states that ***"[u]nless the employee is relieved of all duty during a 30 minute meal period," the meal period will he considered an on-duty meal, and not off-duty, meal period and counted as time worked***. The obligation to attend to the vehicle is not necessarily an employer-imposed requirement but is based upon a federal regulation. ***Such time in carrying out this federal responsibility, however, is subject to the control of and for the benefit of the employer***. Specifically, the manner and means by which the driver complies with the federal regulation is controlled by the Company, and the employee is engaged in the duty of attending to the vehicle which is part of the working conditions of the employee. ***The employee is not free to use such time for his or her own use*** but is, in fact, engaged in work duties for the benefit of the Company and in concert with the Company's own obligations under the Federal Hazardous Materials Transportation Act, including these driving and parking rules. (See 49 C.F.R. § 397.1). (emphasis added)
>
> In sum, it is the opinion of the Labor Commissioner that **a meal period provided to a Company driver transporting hazardous materials who is not relieved of his or her duty to remain with or remain close to his or her truck as a consequence of their obligations under the Federal Hazardous Materials Act is *not* an off-duty meal period** as provided for under Wage Order 9-2001. Pursuant to Wage Order 9-2001, subd. 11(C), the meal period under these circumstances is considered an ***on-duty*** meal period and ***must*** be counted as time worked. (emphasis added). *Id.*

46.    California courts have made it clear that requiring employees to remain on premises during meal breaks constitutes control over the workers, and transforms what would otherwise be an off-duty and unpaid meal break into paid and compensable time. *See Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 975 (1995) ("When an employer directs, commands, or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control [and] must be paid."); *Morillion v. Royal Packing*, 22 Cal. 4th 575, 582 (2000)

(favorably citing *Bono*); *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1056 (2020) (favorably citing *Bono* and holding that employer's requirement of on-premises exit searches, which were "enforced through threat of discipline[,]" are compensable time under the Wage Order's "hours worked" control clause). No California Court of Appeals is contrary to these decisions); see *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016) (". . . one cannot square the practice of compelling employees to remain at the ready, *tethered by time and policy to particular locations* or communication devices, with the requirement to relieve employees of all work duties and employer control during 10-minute rest breaks.") (emphasis added).

47.     Therefore, federal regulations and OHFL's policies and practices of requiring Titus and its drivers to attend to trucks at all times, without paying for all such time, clearly violate Labor Code Section 1194, because OHFL has not paid for all of Titus and its other California Drivers' on-duty time. As a result of OHFL's policies and practices described above, OHFL regularly failed to pay Titus and its other California Drivers for all hours worked – specifically, for all their on-duty time spent watching their tankers during unpaid meal breaks -- in violation of Labor Code Sections 1194 and 1197.

48.     Under OHFL's uniform compensation system, and in violation of Labor Code section 226.2(a)(1), Titus and its other California Drivers are and were not compensated for all nonproductive time separately from their piece-rate compensation on trips that cannot be completed in one day. *See* Labor Code section 226.2; *see also Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872–73 (2013) ("Thus, contrary to Safeway's argument, a piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law.").

49.     Additionally, Titus and OHFL's other non-exempt employees and Drivers are underpaid for hours worked.

50.     For example, during the pay period of October 1, 2021, through October 15, 2021, Titus' wage statement indicates that he worked 1.57 hours of overtime at $39.885 per hour and earned $62.49 for the same.  See **Exhibit 6**.  1.57 multiplied by $39.885 equals $62.62, not $62.49 as reported on his wage statement.

51.    Because of the violations set forth above, and as evidenced in the samples of Titus' wage statements attached hereto as **Exhibit 2**, **4**, and **6**, the wage statements furnished by OHFL violated Labor Code sections 226(a) and 226.2 insofar as they failed to:

a.    Accurately show the gross wages earned in violation of section 226(a)(1);

b.    Accurately show the total number of hours worked by the employee in violation of section 226(a)(2);

c.    Accurately show the net wages earned in violation of section 226(a)(5);

d.    Accurately show all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate in violation of section 226(a)(9); and

e.    Separately state the total hours of other nonproductive time, the rate of compensation, and the gross wages paid for that time during the pay period in violation of section 226.2(a)(3).

52.    Separately, and apart from the above, the wage statements OHFL furnishes to its non-exempt California and Drivers violate Labor Code section 226(a) insofar as they fail to accurately show the total hours worked in violation of section 226(a)(2).  Specifically, they list multiple different categories of earnings including, but not limited to:  (1) "Regular Pay", (2) "LH Rest Break", (3) "LH Work Time", (4) "Overtime", (5) "Doubletime", (6) "Linehaul Miles", (7) "LH Drive Time", and (8) "PTO".  See **Exhibit 6**.  With respect to the hours worked during the pay period, the wage statements (a) inaccurately include all of the different categories of earnings together under the heading "Hours / Units" and (b) fail to accurately set forth the number of hours Titus actually worked—the wage statements do not include a line item for "total hours worked" at all.

53.    For Example, during the pay period of October 1, 2021 through October 15, 2021, Titus' wage statement indicates that he worked 10.60 "Regular Pay" hours, .67 "LH Rest Break" hours, (3) .0.17 "LH Rest Break" hours, (4)1.20 "LH Work Time" hours", (5) -0.67 "LH Work Time" hours, (6) 1.57 "Overtime" hours, (7) 699.00 "Linehaul Miles", and (8) 11.68 "LH Drive Time" hours, for a total of 723.88 "Hours / Units".  See **Exhibit 6**.  Clearly, Titus did not work 723.88 hours.  *Id*.  If Titus or another of OHFL's non-exempt employees or Drivers sought to calculate the total number of hours worked during a pay period and added the hours listed under each of the aforementioned categories, the total hours worked would be incorrect.  *Id*.; see *McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 292 (C.D. Cal. 2011).

54. Further, and apart from the above, the wage statements OHFL furnishes to its non-exempt California and Drivers violate Labor Code section 226(a) insofar as they fail to accurately show both (a) gross wages earned in violation of section 226(a)(1) and (b) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate in violation of section 226(a)(9). Specifically, the gross wages earned, hourly rates, and corresponding of hours worked often do not match.

55. For Example, during the pay period of October 1, 2021 through October 15, 2021, Titus' wage statement indicates that he worked 1.57 hours of overtime at $39.885 per hour and earned $62.49 for the same. See **Exhibit 6**. 1.57 multiplied by $39.885 equals $62.62, not $62.49 as reported on his wage statement. All of this information was thus incorrect for Titus and OHFL's other non-exempt California employees and Drivers.

56. OHFL was, at all times relevant herein, aware of the requirements of Labor Code sections 226 and 226.2, as well as California case law.

57. OHFL has, at all times relevant herein, furnished wage statements to each of its California Drivers pursuant to an established set of policies, procedures and practices.

58. Titus and OHFL's other California Drivers, both current and former, have suffered injury as a result of OHFL's knowing and intentional failure to comply with Labor Code section 226(a).

59. Titus and OHFL's other California Drivers, both current and former, have suffered injury as a result of OHFL's knowing and intentional failure to furnish wage statements accurately showing the gross wages earned by the in violation of Labor Code section 226(a)(1).

60. Titus and OHFL's other California Drivers, both current and former, were unable to promptly and easily determine their gross wages earned from the wage statements furnished by OHFL.

61. Titus and OHFL's other California Drivers, both current and former, have suffered injury as a result of OHFL's knowing and intentional failure to furnish wage statements accurately showing the total number of hours worked by the employee in violation of Labor Code section 226(a)(2).

62.     Titus and OHFL's other California Drivers, both current and former, were unable to promptly and easily determine the total number of hours they worked from the wage statements furnished by OHFL.

63.     Titus and OHFL's other California Drivers, both current and former, have suffered injury as a result of OHFL's knowing and intentional failure to furnish wage statements accurately showing the net wages earned by the employee in violation of Labor Code section 226(a)(5).

64.     Titus and OHFL's other California Drivers, both current and former, were unable to promptly and easily determine their net wages earned from the wage statements furnished by OHFL.

65.     Titus and OHFL's other California Drivers, both current and former, have suffered injury as a result of OHFL's knowing and intentional failure to furnish wage statements accurately showing applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee in violation of Labor Code section 226(a)(9).

66.     Titus and OHFL's other California Drivers, both current and former, were unable to promptly and easily determine all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate from the wage statements furnished by OHFL.

67.     From at least four years prior to the filing of the original Complaint, OHFL has adopted and used unfair business practices to minimize their California employees' compensation and increase profits.  These unfair business practices included failing to pay minimum wage, failing to pay all overtime and sick paid owed and at the correct rate, failing to provide compliant meal and rest periods or to pay premiums for the same at the correct rates, failing to pay drivers for their time spent on Non-Driving Tasks on trips that could not be completed in one day, failing to pay drivers minimum wage for attending to their trucks during meal breaks as required by California law, and failure timely pay employees at the end of their employment.

68.     Because of the violations set forth above, Titus and OHFL's other non-exempt employees and California Drivers are not timely paid at the end of each pay period and at the end of their employment.

## PAGA ALLEGATIONS

69.     The Private Attorney General Act ("PAGA"), as set forth at California Labor Code § 2698 et seq., is and at all times relevant herein was applicable to Titus' employment by OHFL.

70.     Pursuant to Labor Code § 2699(a) any provision of the Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures outlined in Labor Code § 2699.3.  California Labor Code § 2699(a).

71.     Pursuant to PAGA, an "aggrieved employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Labor Code § 2699(c).

72.     Titus was employed by OHFL and the alleged violations were committed against him during his time of employment.  Titus is therefore an aggrieved employee as defined by Labor Code § 2699(c).  Other current and former employees are also aggrieved employees in that one or more of the alleged violations were also committed against them during their time of employment with OHFL.

73.     As is outlined herein, OHFL violated the Labor Code as to Titus and other current and former employees it employed and/or employs within California.  Specifically, OHFL violated Labor Code sections 201, 202, 203, 204, 210, 226, 226.2 , 226.7, 233, 246, 510, 512, 1182.12 et seq., 1194, 1197, and 1198, and the applicable IWC Wage Orders.

74.     Pursuant to Labor Code § 2699(f), the civil penalty recoverable in a PAGA action is that which is provided for by the by the Labor Code.  When the Labor Code does not provide a civil penalty, the penalty recoverable shall be $100 for the initial violation per employee per pay period and $200 for each subsequent violation per employee per pay period.

75.     Pursuant to Pursuant to California Labor Code § 2699(g), an aggrieved employee may recover the civil penalty on behalf of himself or herself and other current or former employees

against whom one or more of the alleged violations was committed.  Furthermore, any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs.

76.     Pursuant to Labor Code § 2699.3, an aggrieved employee, including Titus, may pursue a civil action arising under PAGA after the following requirements have been met:

a.    The aggrieved employee shall give written notice by certified mail to the LWDA and the employer (hereinafter "Employee's Notice") of the specific provisions of California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations;

b.    The LWDA shall provide notice (hereinafter "LWDA's Notice") to the employer and the aggrieved employee by certified mail that it does not intend to investigate the alleged violation within 60 days of the postmark date of the Employee's Notice.  Upon receipt of the LWDA's Notice, or if the LWDA does not provide notice with 65 calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code § 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

c.    For all alleged violations not enumerated in Labor Code § 2699.5, the employer is given thirty-three (33) days to cure and notify the aggrieved employee by certified mail that the violation has been cured.  If the violation is not cured, the aggrieved employee may commence a civil action pursuant to California Labor Code § 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

77.     On February 18, 2022, Titus sent notice to the LWDA of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

78.     As of the filing of this complaint, which is more than 65 days after February 18, 2022, the LWDA has not responded to Titus's notification or otherwise indicated an intention to investigate his claims.  Titus has satisfied the administrative prerequisites under Labor Code §

2699.3 to bring a civil action to recover penalties against OHFL, in addition to other remedies, for violations of California Labor Code 201, 202, 203, 204, 210, 226, 226.2, 226.7, 233, 246, 510, 512, 1182.12 et seq., 1194, 1197, and 1198 and the applicable IWC Wage Orders.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff seeks to maintain this action as a class action as to the First through Eight causes of action.  Plaintiff brings this action, on behalf of himself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The putative class which Plaintiff seeks to represent consists of the following:

a.     All individuals employed in California by OHFL in the position of Driver from October 26, 2018, through the date of final judgment (the "Driver Class");

b.     All individuals employed in California by OHFL in the position of Driver who transported hazardous materials from October 26, 2018, through the date of final judgment (the "Hazmat Driver Subclass");

c.     All individuals employed in California by OHFL in the position of Driver from October 26, 2021, through the date of final judgment (the "Driver Wage Statement Subclass");

d.     All non-exempt California employees who worked for OHFL from October 26, 2018, through the date of final judgment (the "Non-Exempt Class");

e.     All non-exempt California employees who worked one or more shit of over 6 hours for OHFL from October 26, 2018, through the date of final judgment (the "Meal Break Class");

f.     All non-exempt California employees who worked one or more shit of over 3.5 hours for OHFL from October 26, 2018, through the date of final judgment (the "Rest Break Class");

g.     All current and former non-exempt California employees of Defendants who received commissions, non-discretionary bonuses and/or other items of compensation and used sick leave during at least one pay period from October 26, 2018, through the date of final judgment (the "Sick Pay Class");

h.    All non-exempt California employees who worked for OHFL from October 26, 2021, through the date of final judgment (the "Non-Exempt Wage Statement Subclass"); and

i.    All members of the Driver Class, Hazmat Driver Subclass, the Non-Exempt Class, Meal Break Class, the Rest Break Class, and the Sick Pay Class whose employment ended between October 26, 2019, and the date of final judgment (the "Waiting Time Penalty Class").

The Driver Class, Hazmat Driver Subclass, Driver Wage Statement Subclass, Non-Exempt Class, Meal Break Class, Rest Break Class, Sick Pay Class and Non-Exempt Wage Statement Subclass, and Waiting Time Penalty Subclass are collectively referred to as the Class.

80.    The class of persons is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action is a benefit to the parties and to the Court. Plaintiff is informed and believes, and based thereon alleges, that Defendants employ more than 100 employees who satisfy the class definition. Although the exact number and identity of class members is not presently known, they can be identified in Defendants' records through coordinated discovery pursuant to this class action.

81.    This action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure because the questions of law and fact which are common to class members clearly predominate over any questions affecting only individual members and because a class action is superior to other available methods for adjudicating the controversy.

82.    There are numerous common questions of law and fact arising out of Defendants' conduct. This class action focuses on Defendants' failure to a) make separate payments to current and former Drivers on an hourly basis for their time spent on rest breaks and the other Non-Driving Tasks, b) provide paid rest breaks to its Drivers, c) properly pay minimum wage and overtime, d) to provide compliant meal and rest breaks, e) issue complete, accurate itemized wage statements, and c) timely pay its employees at the end of their employment.

83.    Furthermore, common questions of fact and law predominate over any questions affecting only individual members of the class.  The predominating common or class-wide questions of law and fact include the following:

      a.    Whether Defendants' California Drivers were not compensated for rest and recovery periods and other nonproductive time separately from their piece-rate compensation;

      b.    Whether Defendants California Drivers were not paid minimum wage when then were forced to stay on-duty for the entirety of their shift while transporting hazardous materials;

      c.    Whether Defendants' California Drivers were not compensated for rest and recovery periods at a regular hourly rate that is no less than the higher of: (i) an average hourly rate determined by dividing the total compensation for the rest and recovery periods and any premium pay compensation for overtime, by the total hours worked during the workweek, exclusive of rest and recovery periods; or (ii) the applicable minimum wage in violation of Labor Code section 226.2(a)(3) for trips that could not be completed in one day;

      d.    Whether Defendants' California Drivers received duty-free rest breaks, timely received their duty-free rest breaks, received uninterrupted duty-free rest breaks and/or received the requisite number of duty-free rest breaks for the duration of their shifts;

      e.    Whether Defendants paid the premium pay associated with duty free rest breaks on trips that could not be completed in one day;

      f.    Whether Defendants failed to properly pay overtime to its non-exempt California Employees;

      g.    Whether Defendants failed to provide compliant meal and rest breaks to its non-exempt California Employees;

      h.    Whether itemized wage statements furnished to Defendants' California employees pursuant to Labor Code section 226,

i.    Whether Defendants failed to pay all compensation due and owing to former non-exempt California employees and Drivers at the end of their employment;

j.    Whether the alleged violations constitute unfair business practices;

k.    Whether the Class is entitled to injunctive relief; and

l.    Whether the Class is entitled to unpaid wages, civil and statutory penalties and/or restitutionary relief, and the amount of the same.

84.    Plaintiff's claims are typical of the claims of the members of the Class as a whole, all of whom have sustained and/or will sustain damage and injury as a proximate and/or legal result of the alleged violations of Defendants.  Plaintiff's claims are typical of those of the Class because Defendants subjected Plaintiff and each member of the Class to the same violations alleged herein.

85.    The defenses of Defendants, to the extent that such defenses apply, are applicable generally to the whole Class and are not distinguishable as to the proposed class members.

86.    Plaintiff will fairly and adequately protect the interests of all members of the Class, and has retained attorneys with extensive experience in litigation, including class and representative actions.  Plaintiff has no interests that conflict with those of the Class.  Plaintiff is able to fairly and adequately protect the interests of all members of the class because it is in her best interest to prosecute the claims alleged herein in order to obtain the full compensation due himself and the other class members.

87.    A class action is superior to any other method available for fairly and efficiently adjudicating the controversy because 1) joinder of individual class members is not practical, 2) litigating the claims of individual class members would be unnecessarily costly and burdensome and would deter individual claims, 3) litigating the claims of individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, 4) class members still working for Defendants may be fearful of retaliation if they were to bring individual claims, 5) class members would be discouraged from pursuing individual claims because the damages available to them are relatively small, and 6) public policy encourages the use of the class actions to enforce employment laws and protect individuals who, by virtue of their subordinate position, are particularly vulnerable.

88. Judicial economy will be served by maintenance of this lawsuit as a class action. To process numerous virtually identical individual cases will significantly increase the expense on the Court, the class members and Defendants, all while unnecessarily delaying the resolution of this matter. There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court and doing so will provide multiple benefits to the litigating parties including, but not limited to, efficiency, economy, and uniform adjudication with consistent results.

89. Notice of a certified class action and any result or resolution of the litigation can be provided to class members by mail, email, publication, or such other methods of notice as deemed appropriate by the Court.

**FIRST CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME**
**[Cal. Labor Code §§ 510 and IWC Wage Orders]**
**Against Defendants**

90. Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

91. Pursuant to California Labor Code section 510, any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

92. Pursuant to California Labor Code section 1198, the maximum hours of work and standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees and the employment of any employee for longer hours than those fixed by the commission or under conditions of labor prohibited by the order is unlawful.

93. The Fair Labor Standards Act, 29 USC §§ 201 et seq. and 29 CFR §§ 778 et seq., requires time-and-a-half pay for the time an employee works over forty hours a week.

94.     The "regular rate of pay" includes all remuneration for employment paid to the employee and includes, but is not limited to, hourly earnings, salary, piece work earnings, commissions, non-discretionary bonuses, and the value of meals and lodging.  See 29 U.S.C. § 207(e); DLSE Enforcement Policies and Interpretations Manual Section 49.

95.     During the relevant time period, Plaintiff and Defendant's other non-exempt California employees regularly worked overtime.

96.     During the relevant time period, Defendant intentionally and willfully failed to pay Plaintiff and other members of the Non-Exempt Employee Class the proper overtime wages due to them.

97.     During the relevant time period, Defendant intentionally and will fully failed to properly calculate and pay overtime wages due to Plaintiff and other members of the Non-Exempt Employee Class.

98.     Wherefore, Plaintiff and other members of the Non-Exempt Employee Class have been injured as set forth above and request relief as hereafter provided.

**SECOND CAUSE OF ACTION**
**FAILRE TO PROVIDE REST BREAKS**
**[Cal. Labor Code §§ 226.7, 512 and IWC Wage Orders]**
**Against Defendants**

99.     Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

100.     Labor Code § 226.7 requires employers to provide employees rest periods as mandated by Order of the Industrial Welfare Commission.  It states:

    a.     No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

    b.     If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee 1 additional hour of pay at the

employee's regular rate of compensation for each work day that the meal or rest period is not provided

101.     The applicable Wage Order(s) provides that every "employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof…"  The applicable Wage Order further provides that "[i]f an employer fails to provide an employee rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

102.     During the relevant time period, Plaintiff and other members of the Rest Break Class were not provided with compliant rest breaks, nor did they receive an additional hour of premium pay for each missed rest break.  When they received premiums, they were not paid at the appropriate rate.

103.     Wherefore, Plaintiff and other members of the Rest Break Class have been injured as set forth above and request relief as hereafter provided.

### THIRD CAUSE OF ACTION
### FAILRE TO PROVIDE MEAL BREAKS
### [Cal. Labor Code §§ 226.7, 512 and IWC Wage Orders]
### Against Defendants

104.     Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

105.     Labor Code § 226.7 requires employers to provide employees meal breaks as mandated by Order of the Industrial Welfare Commission.  It states:

   a.     No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

   b.     If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee 1 additional hour of pay at the

employee's regular rate of compensation for each work day that the meal or rest period is not provided.

106.    Labor Code § 512(a) and the applicable Wage Order(s) provide that an employer may not employ a person for a work period of more than 5 hours per day without providing that employee a meal period of not less than 30 minutes, except that if the total work period per day is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.  An employer may not employ a person for a work period of more than 10 hours per day without providing an employee with a second meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than twelve 12 hours, the meal period may be waived by mutual consent of both the employer and the employee, and if the first meal period was not waived.

107.    During the relevant time period, Plaintiff and the other members of the Meal Break Class were not provided with compliant meal breaks, nor did they receive an additional hour of premium pay for each missed meal break.  When they received premiums, they were not paid at the appropriate rate

108.    Wherefore, Plaintiff and other members of the Meal Break Class have been injured as set forth above and request relief as hereafter provided.

**FOURTH CAUSE OF ACTION**
**FAILURE TO PAY SICK LEAVE AT CORRECT RATE**
**[Cal. Labor Code §§ 218, 233, 246 et seq. and IWC Wage Orders]**
**Against Defendants**

109.    Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

110.    Labor Code section 246(l) requires that employers pay sick time pay to non-exempt employees at that employee's "regular rate of pay."

111.    The "regular rate of pay" includes all remuneration for employment paid to the employee and includes, but is not limited to, hourly earnings, salary, piece work earnings, shift

differentials, commissions, non-discretionary bonuses, and the value of meals and lodging.  See 29 U.S.C. § 207(e); DLSE Enforcement Policies and Interpretations Manual Section 49.

112.     During the relevant time period, Defendants failed to include commissions, incentive payments, non-discretionary bonuses, and/or other items of compensation when determining the "regular rate of pay" for Smith and their other non-exempt California employees for purposes of sick time pay.

113.     According to the California Supreme Court, sick pay is a form of wages.  *Murphy v. Kenneth Cole Productions* (2007) 40 Cal.4th 1094, 1103.

114.     Labor Code section 233 provides that "any employer who provides sick leave for employees shall permit an employee to use in any calendar year the employee's accrued and available sick leave entitlement, in an amount not less than the sick leave that would be accrued during six months at the employee's then current rate of entitlement, for the reasons specified in subdivision (a) of Section 246.5."

115.     During the relevant time period, Defendants intentionally and willfully failed and refused to allow Plaintiffs and the other members of the Sick Pay Class to use their sick pay.

116.     During the relevant time period, Defendants also intentionally and willfully failed to pay Smith and the other members of the Sick Pay Class their sick pay at the rate of pay required by law.  Accordingly, Smith and the other members of the Sick Pay Class did not receive the full amount of paid sick time that they were entitled to receive by law, and were therefore denied the right to use sick leave within the meaning of Labor Code sections 233(a) and (c).

117.     Any employer who violates Labor Code section 233 is liable to employees for the greater of one days' pay or actual damages, reasonable equitable relief, and reasonable attorneys' fees and costs.  Labor Code §233(d), (e).

118.     Further, Labor Code section 218 authorizes a private right of action to recover unpaid wages.

119.     Wherefore, Plaintiff and other members of the Sick Pay Class have been injured as set forth above and request relief as hereafter provided.

## FIFTH CAUSE OF ACTION
### FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS
### [Cal. Labor Code §§ 226, 226.2, 2226.3]
### Against Defendants

120.    Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

121.    Pursuant to Labor Code section 226(a) "every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when the wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . ., (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number, (8) the name and address of the legal entity that is the employer . . ., (9) all applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate by the employee and, if the employer is a temporary services employer . . ., the rate of pay and the total hours worked for each temporary services assignment."

122.    An employee suffering injury as a result of the knowing and intentional failure by an employer to comply with Labor Code section 226(a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed the aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.  Labor Code § 226(e)(1).

123.    An employee is deemed to suffer injury if the employer fails to provide a wage statement or if the employer fails to provide accurate and complete information as required by any one or more of the items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone, i) the amount of gross/net wages paid to the

employee during the pay period or any of the other information required to be provided pursuant to Labor Code section 226(a) items (2) to (4), inclusive, (6) and (9), ii) deductions made by the employer, iii) the name and address of the employer and iv) the name of the employee and the last four digits of his or her social security number or employee identification number.  Labor Code § 226(e)(2)(A) and (B)(i)-(iv).  "Promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information.  Labor Code § 226(e)(2)(C).

124.    Furthermore, under Labor Code section 226.2, employers must issue wage statements to employees that separately state the total hours of compensable rest periods, the rate of compensation for such periods, and the gross wages paid for those rest periods each pay period.  *See,* Labor Code section 226.2(a)(2).  Section 226.2(a)(2)(B) also requires that the wage statements include the total hours of other non-productive time, the rate of compensation, and the gross wages paid for that time period.

125.    Defendants violated Section 226(a) by paying its drivers on a combined piece-rate and hourly basis, while failing to issue wage statements to drivers that include their total hours worked during the pay period.  *See, e.g.*, *McKenzie v. Federal Express Corp.*, 765 F.Supp.2d 1222 (C.D. Cal. 2011) (wage statements violated California Labor Code by not including, *inter alia*, total hours worked giving rise to claims under both Section 226 and for PAGA penalties); *See Cicairos v. Summit Logistics*, 133 Cal. App. 4th 949, 954 ("If it is left to the employee to add up the daily hours shown on the time cards or other records so that the employee must perform arithmetic computations to determine the total hours worked during the pay period, the requirements of section 226 would not be met"); *see also* Cal. Labor Code § 226(e)(2)(B) (clarifying that injury is established where the wage statement violated Section 226(a)(1), (2), or (5), among other provisions, and where employees cannot easily determine the gross or net wages earned by the employee during the pay period).

126.    As set forth above, Defendants intentionally and willfully failed to furnish accurate itemized wage statements.  Here, Defendant's wage statements do not accurately show their drivers'

a.    Gross wages earned, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period and corresponding number of hours

worked at each hourly rate by the employee as required by section 226(a)(1),
(2), (5) and (9); or

b.    The total hours of other nonproductive time, the rate of compensation, and the
gross wages paid for that time during the pay period as required by section
226.2(A)(3).

127.    Wherefore, Plaintiff and other members of the Non-Exempt Employee Wage
Statement Class and Driver Wage Statement Class have been injured as set forth above and request
relief as hereafter provided.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PAY SEPARATELY AND HOURLY FOR TIME SPENT ON NON-**
**DRIVING TASKS**
**[Cal. Labor Code §§ 1194, 1194.2 and 226.2]**
**Against Defendants**

128.    Plaintiff hereby realleges and incorporates by reference each and every allegation set
forth above as though fully set forth herein, except as said paragraphs are inconsistent with the
allegations of this cause of action.

129.    The actionable period for this cause of action is three years prior to the filing of the
original Complaint through preliminary approval.

130.    Section 1194 of the Labor Code provides, in relevant part:

> Notwithstanding any agreement to work for a lesser wage, any
> employee receiving less than the legal minimum wage ... applicable to
> the employee is entitled to recover in a civil action   the unpaid balance
> of the full amount of this minimum wage ... including interest thereon,
> reasonable attorney's fees, and costs of suit.

131.    Section 1194.2 of the Labor Code provides, in relevant part:

> In any action under ... Section 1194 to recover wages because of the
> payment of a wage less than the minimum wage fixed by an order of
> the commission, an employee shall be entitled to recover liquidated
> damages in an amount equal to the wages unlawfully unpaid and
> interest thereon.

132.    Labor Code section 226.2 codified existing law mandating that, *inter alia*, truck
drivers paid on a piece-rate basis must be paid separately and hourly for non-productive time.
Specifically, Labor Code section 226.2 states that "employees shall be compensated for . . .

nonproductive time separate from any piece-rate compensation." *See,* California Labor Code section 226.2(a)(1).

133.    Labor Code section 226.2 also makes clear that hourly pay for non-productive time, must be paid out at the higher of (i) the average hourly rate determined by dividing the total compensation for the workweek, exclusive of compensation for rest periods and overtime, by the total hours worked during the workweek, exclusive of rest periods, or (ii) the applicable minimum wage. *Id.* (a)(3).

134.    As set forth above, during the Class Period, Plaintiff and the other members of the Driver Class were not paid separately and hourly for Non-Driving Tasks, such as pre- and post-inspections, waiting time, work-related paperwork, maintenance, and fueling and cleaning on trips that could not be completed in one day.  Plaintiffs and the other members of the Driver Class were paid on a piece-rate basis based on the load delivered, but Defendants did not separately compensate drivers on an hourly basis at the stepped-up rate of at least minimum wage for time spent on Non-Driving Tasks on trips that could not be completed in one day.

135.    Accordingly, during the Class Period, Plaintiff and the other members of the Driver Class did not receive their hourly wages for Non-Driving Tasks on trips that could not be completed in one day.

136.    In failing to pay truck drivers separately and hourly for time spent on Non-Driving Tasks, Defendants operated in bad faith given the issuance of Labor Code § 226.2, *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872–73 on May 8, 2013, and the cases cited therein. Following the issuance of *Bluford*, Defendant purposefully failed to pay the back wages due to Plaintiff and the other current and former truck Drivers who were owed back wages. This knowing awareness of a legal obligation coupled with the intentional decision not to pay the back wages due constitutes a willful violation of Sections 1194 and 226.2 of the Labor Code.

137.    Accordingly, pursuant to sections 1194, 1194.2, 226.2 and 218 of the California Labor Code, Plaintiff and the Driver Class are entitled to recover, at a minimum, their unpaid hourly wages, plus liquidated damages in an additional amount equal to the total amount minimum wages unlawfully withheld during the Class Period for drivers' unpaid non-productive time, plus liquidated

damages in an additional amount equal to the total amount minimum wages unlawfully withheld during the Class Period.

138.    Pursuant to section 1194 of the Labor Code, Plaintiff and the Driver Class are also entitled to recover interest, costs, and attorneys' fees associated with this cause of action.

139.    Wherefore, Plaintiff and the other members of the Driver Class have been injured as set forth above and request relief as hereafter provided.

**SEVENTH CAUSE OF ACTION**
**FAILUER TO PAY MINIUM WAGE**
**[Lab. Code § 1182.12 et seq. and IWC Order]**
**Against Defendants**

140.    Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

141.    California Labor Code section 1182.12 establishes the minimum wage for California employees from July 1, 2014, to present.

142.    Labor Code Section 1194 provides, in relevant part:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage ... applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage ... including interest thereon, reasonable attorney's fees, and costs of suit.

143.    Labor Code section 1194.2 provides, in relevant part:

> In any action under ... Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

144.    Labor Code section 1197 provides that the minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a lesser wage is unlawful

145.    Pursuant to California Labor Code section 1198, the maximum hours of work and standard conditions of labor fixed by the commission shall be the maximum hours of work and the

standard conditions of labor for employees and the employment of any employee for longer hours than those fixed by the commission or under conditions of labor prohibited by the order is unlawful.

146.    Here, Defendants and federal regulations required Plaintiff and the members of the Hazmat Driver Class to attend to their trucks at all times, including during their mandatory thirty-minute DOT meal periods, which were unpaid. Although Plaintiff the members of the Hazmat Driver Class were subject to the Defendant's control during such on-duty DOT meal periods during the Class Period, Defendants failed to compensate Plaintiffs and the members of the Hazmat Driver Class for such compensable time.

147.    Defendants also intentionally and willfully failed to pay Plaintiff and the other members of the Non-Exempt Class for every hour worked

148.    Wherefore, Plaintiff and the other members of the Non-Exempt Class and Hazmat Driver Class have been injured as set forth above and request relief as hereafter provided.

## EIGHTH CAUSE OF ACTION
### FAILURE TO TIMELY PAY WAGES
### [Cal. Labor Code § 201 and 202]
### On Behalf of Plaintiff and the Waiting Time Penalty Subclass

149.    Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

150.    Pursuant to Labor Code section 201, if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

151.    Pursuant to Labor Code section 202, if an employee quits his or her employment, his or her wages become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours' previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

152.    During the relevant time period, Plaintiff and the other members of the Waiting Time Penalty Subclass were not timely paid all of their earned but unpaid wages when their employment with Defendants ended.

153.    During the relevant time period, Defendants intentionally and willfully failed to timely pay Plaintiff and the other members of the Waiting Time Penalty Subclass all of their earned and unpaid wages when their employment ended

154.    Wherefore, Plaintiff and the other members of the Waiting Time Penalty Class have been injured as set forth above and request relief as hereafter provided.

**NINTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
**[Cal. Bus. and Prof. Code § 17200 *et seq*.]**
**On Behalf of Plaintiff and the Class**

155.    Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

156.    Section 17200 of the California Business and Professions Code prohibits any unlawful, unfair, or fraudulent business practices.

157.    Section 90.5(a) of the Labor Code states that it is the public policy of California to enforce vigorously minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

158.    Through its actions and/or omissions alleged herein, Defendants have engaged in unfair competition within the meaning of section 17200 of the California Business and Professions Code, because Defendants' conduct has violated state wage and hour laws as alleged herein. Indeed, Defendants' conduct has damaged Plaintiff and the Class members by wrongfully denying them minimum wages and/or separate hourly pay for statutory rest periods and other Non-Driving Tasks during the Class Period on trips that could not be completed within one day and failing to provide them with rest breaks as required by California law on trips that could not be completed within one day and therefore was substantially injurious to Plaintiffs and the Class members

159.    Under section 17208 of the California Business and Professions Code, the statute of limitations for a claim under Section 17200 is four years. Thus, the actionable period for this cause of

action is four years prior to the date of the filing of the original Complaint through preliminary approval.

160.    Defendants engaged in unfair competition in violation of sections 17200, et seq. of the California Business & Professions Code by violating sections 201, 202, 226, 226.2, 226.7 and 1194 of the California Labor Code, as well as Section 12 of the applicable IWC Wage Order.

161.    The harm to Plaintiff and the other members of the Class, including being denied payment in the amount of their applicable hourly wages for their statutory rest periods and other Non-Driving Tasks, in not being provided paid statutory rest breaks and other Non-Driving Tasks, not being timely paid when their employment ended, and in not being provided accurate itemized wage statements, outweighs the utility, if any, of Defendants' policies and practices. Therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of section 17200 of the California Business and Professions Code.

162.    Wherefore, Plaintiff and the other members of the Class have been damaged as set forth above and request relief as hereafter provided.

### TENTH CAUSE OF ACTION
**Private Attorneys General Act**
**[Cal. Labor Code § 2698 *et seq.*]**
**Against Defendants**

163.    Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

164.    Pursuant to Labor Code § 2699(a), any provision of the Labor Code which provides for a civil penalty to be assessed and collected by the LWDA for violations of the Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures outlined in Labor Code § 2699.3.

165.    Plaintiff was employed by Defendants and the alleged violations were committed against him during his time of employment. Plaintiff is therefore an aggrieved employee as defined by Labor Code § 2699(c). Other former and current employees are also aggrieved employees in that

one or more of the alleged violations were also committed against them during their time of employment with Defendants.

166. On March 15, 2017, Plaintiff provided written notice to the Labor and Workforce Development Agency ("LWDA") and Defendants of the specific provisions of the Labor Code alleged to have been violated by Defendants, including the facts and theories to support the alleged violations.

167. Pursuant to Labor Code § 2699(f), the civil penalty recoverable in a PAGA action is that which is provided for by the Labor Code or, where no civil penalty is specifically provided, one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

168. Pursuant to California Labor Code § 2699(g), an aggrieved employee may recover the civil penalty on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed. Furthermore, any employee who prevails in any such action shall be entitled to an award of reasonable attorney's fees and costs.

169. Wherefore, Plaintiff and the other former and current employees have been damaged as set forth above and request relief as hereafter provided. Plaintiff also hereby requests the civil penalty, attorney's fees and costs recoverable in a civil action brought by an aggrieved employee on behalf of himself and, as a proxy for the LWDA, on behalf of other current and former employees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

**As to the First through Sixth Causes of Action:**

1. That this Court certify the Class;

2. That this Court certify Plaintiff as the representative of the Class;

3. That this Court appoint Mayall Hurley, P.C. and Ackermann & Tilajeff, P.C. as Class Counsel;

4. That this court award actual, compensatory, special, and general damages, including unpaid minimum wages and unpaid rest period wages, as well as restitutionary relief to Plaintiff and the members of the Class;

5.    For injunctive relief, including that available under Labor Code sections 226(h) and 248.5(e) as well as Business and Professions Code Section 17203;

6.    For unpaid premium pay as required by Labor Code section 226.7 and the applicable IWC Wage Order(s);

7.    That this Court award penalties and liquidated damages including, but not limited to, those available under Labor Code sections 204, 226, 226.7, 1194 and 1194.2;

8.    That this Court award statutory attorneys' fees and costs, including those available under Labor Code sections 218.5, 226(e)(1), 226(h), 1194 and 1194.2, as well as Code of Civil Procedure section 1021.5;

9.    That this Court award prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law; and

10.   Such other and further relief as the court deems just and proper.

**As to the Seventh Cause of Action:**

1.    For civil penalties including, but not limited to, those available under Labor Code sections 226.3, 256, 558, 1197.1 and 2699(f);

2.    For injunctive relief to ensure compliance pursuant to Labor Code section 226(h);

3.    For statutory attorneys' fees and costs, including but not limited to those available under Labor Code section (g);

4.    For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including those available under Civil Code sections 3287(a) and 3289(b), Labor Code sections 218.6 and 1194; and

5.    For such other and further relief as the court deems just and proper.

**DATED:** October 26, 2022                    **MAYALL HURLEY P.C.**


By___ */s/ Robert J. Wassermann*_____
        ROBERT J. WASSERMANN
        WILLIAM J. GORHAM
        Counsel for Plaintiff and the Putative Class

# EXHIBIT 1

| | | |
|---|---|---|
| **Employee Name:** | Justin R Titus | |
| **Employee #:** | 016226 | |
| **Employee Address:** | ▮▮▮▮ | |
| **Department:** | P&D | |
| **Job Title:** | Driver | |
| **Site:** | NCA/NV - 038 - STK | |

| | |
|---|---|
| **Pay Date:** | 12/18/2020 |
| **Pay Period:** | 12/1/2020 - 12/15/2020 |
| **Deposit Advice #:** | 361636235 |
| **Pay Frequency:** | Semi-Monthly |
| **Pay Rate:** | 24.7500 |
| **Federal Filing Status:** | HoH |
| **Federal 2c/Extra Withholding:** | No |
| **State Filing Status:** | HoH; Alt Code 02 (CA) |
| **State Exemptions:** | 3 (CA) |

**Employer Name:** Oak Harbor Freight Lines

**Employer Phone:** 800-858-8815
**Employer Address:** 1339 West Valley Hwy North
PO Box 1469
Auburn, WA 98071

| | Current 12/1/2020 - 12/15/2020 | | | YTD As of 12/15/2020 | |
|---|---|---|---|---|---|
| **Earnings** | **Hours/Units** | **Rate** | **Amount** | **Hours/Units** | **Amount** |
| Regular Pay | | | $250.00 | 1,073.62 | $12,853.42 |
| LH Rest Break | | | | 283.95 | $7,027.77 |
| LH Work Time | | | | 0.50 | $18.56 |
| Overtime | | | | 2.17 | $53.61 |
| Bonus | | | | 102.22 | $3,794.79 |
| Doubletime | | | $250.00 | | $250.00 |
| Linehaul Miles | | | | 9.52 | $471.08 |
| Hostler OT | | | | 648.00 | $377.40 |
| Hostler | | | | 2.05 | $3.08 |
| Sign On Bonus | | | | 8.00 | $8.00 |
| LH Drive Time | | | | | $750.00 |
| CA Lunch | | | | 13.22 | $0.13 |
| **Pre-Tax Deductions** | | | | 4.00 | $99.00 |
| 401K | | | $2.50 | | $128.67 |
| LH Drive Time Amt Offset | | | $2.50 | | $128.54 |
| **Taxes** | | | | | $0.13 |
| Fed W/H | | | $101.39 | | $2,350.52 |
| FICA EE | | | $54.45 | | $820.77 |
| Fed MWT EE | | | $15.50 | | $796.90 |
| CA W/H | | | $3.62 | | $186.37 |
| CA DT EE | | | $25.32 | | $417.95 |
| **Post-Tax Deductions** | | | $2.50 | | $128.53 |
| ROTH | | | $2.50 | | $128.54 |
| **Reimbursements** | | | $2.50 | | $128.54 |
| Cell Stipend | | | | | $45.00 |
| Face Covering Stipend | | | | | $20.00 |
| **Net Pay** | **Routing #** | **Account #** | **Amount** | | **Amount** |
| Direct Deposit | ▮▮▮▮ | | $143.61 | | $10,290.69 |
| | | | $143.61 | | |

| **Accruals & Balances** | |
|---|---|
| PTO Balance: | 0.00 Hours |

CERIDIAN

# EXHIBIT 2

| | | |
|---|---|---|
| **Employee Name:** | Justin R Titus | |
| **Employee #:** | 016226 | |
| **Employee Address:** | ▓▓▓▓▓▓ | |
| **Department:** | P&D | |
| **Job Title:** | Driver | |
| **Site:** | NCA/NV - 038 - STK | |

**Employer Name:** Oak Harbor Freight Lines

**Employer Phone:** 800-858-8815
**Employer Address:** 1339 West Valley Hwy North
PO Box 1469
Auburn, WA 98071

| | |
|---|---|
| **Pay Date:** | 12/22/2020 |
| **Pay Period:** | 12/1/2020 - 12/15/2020 |
| **Deposit Advice #:** | 362290239 |
| **Pay Frequency:** | Semi-Monthly |
| **Pay Rate:** | 24.7500 |
| **Federal Filing Status:** | HoH |
| **Federal 2c/Extra Withholding:** | No/$0.00 |
| **State Filing Status:** | HoH; Alt Code 01 (CA) |
| **State Exemptions:** | 3 (CA) |

| | Current 12/1/2020 - 12/15/2020 | | | YTD As of 12/15/2020 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | 455.57 | | $3,807.20 | 1,529.19 | $16,660.62 |
| Regular Pay | 83.52 | 24.7500 | $2,067.04 | 367.47 | $9,094.81 |
| LH Rest Break | 0.50 | 37.1250 | $18.56 | 1.00 | $37.12 |
| LH Work Time | 1.83 | 24.7500 | $45.36 | 4.00 | $98.97 |
| Overtime | 40.07 | 37.1250 | $1,487.48 | 142.28 | $5,282.27 |
| Bonus | | | | | $250.00 |
| Doubletime | | | | | |
| Linehaul Miles | | | | 9.52 | $471.08 |
| Hostler OT | 324.00 | 0.5824 | $188.70 | 972.00 | $566.10 |
| Hostler | | | | 2.05 | $3.08 |
| Sign On Bonus | | | | 8.00 | $8.00 |
| LH Drive Time | 5.65 | 0.0100 | $0.06 | | $750.00 |
| CA Lunch | | | | 18.87 | $0.19 |
| **Pre-Tax Deductions** | | | | 4.00 | $99.00 |
| 401K | | | $38.13 | | $166.80 |
| LH Drive Time Amt Offset | | | $38.07 | | $166.61 |
| **Taxes** | | | $0.06 | | $0.19 |
| Fed W/H | | | $628.50 | | $2,979.02 |
| FICA EE | | | $172.74 | | $993.51 |
| Fed MWT EE | | | $236.05 | | $1,032.95 |
| CA W/H | | | $55.21 | | $241.58 |
| CA DT EE | | | $126.42 | | $544.37 |
| **Post-Tax Deductions** | | | $38.08 | | $166.61 |
| ROTH | | | $38.07 | | $166.61 |
| **Reimbursements** | | | $38.07 | | $166.61 |
| Cell Stipend | | | $10.00 | | $55.00 |
| Face Covering Stipend | | | $10.00 | | $30.00 |

| | Routing # | Account # | Amount | | Amount |
|---|---|---|---|---|---|
| **Net Pay** | | | | | $25.00 |
| Direct Deposit | ▓▓▓▓▓▓ | | $3,112.50 | | $13,403.19 |
| | | | $3,112.50 | | |

| **Accruals & Balances** | |
|---|---|
| PTO Balance: | 0.00 Hours |

CERIDIAN

# EXHIBIT 3

| Employer Name: | Oak Harbor Freight Lines |
|---|---|
| Employer Phone: | 800-858-8815 |
| Employer Address: | 1339 West Valley Hwy North<br>PO Box 1469<br>Auburn, WA 98071 |

| Employee Name: | Justin R Titus |
|---|---|
| Employee #: | 016226 |
| Employee Address: | |
| Department: | Linehaul |
| Job Title: | Driver |
| Site: | NCA/NV - 038 - STK |

| Pay Date: | 7/29/2021 |
|---|---|
| Pay Period: | 7/16/2021 - 7/31/2021 |
| Deposit Advice #: | 411441403 |
| Pay Frequency: | Semi-Monthly |
| Pay Rate: | 26.5900 |
| Federal Filing Status: | HoH |
| Federal 2c/Extra Withholding: | No |
| State Filing Status: | HoH; Alt Code 02 (CA) |
| State Exemptions: | 1 (CA) |

| | Current 7/16/2021 - 7/31/2021 | | | YTD As of 7/31/2021 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | | | | | |
| Regular Pay | | | $250.00 | 20,782.51 | $51,802.18 |
| LH Rest Break | | | | 854.63 | $22,246.48 |
| LH Work Time | | | | 18.02 | $712.94 |
| Holiday Pay | | | | 91.32 | $2,401.56 |
| Overtime | | | | 16.00 | $425.44 |
| Bonus | | | | 254.10 | $9,880.89 |
| Doubletime | | | $250.00 | | $400.00 |
| Linehaul Miles | | | | 3.63 | $189.42 |
| Sign On Bonus | | | | 19,157.00 | $11,887.76 |
| LH Drive Time | | | | | $2,250.00 |
| CA Lunch | | | | 333.82 | $3.33 |
| PTO | | | | 5.00 | $132.95 |
| **Memo Information** | | | | 49.00 | $1,271.41 |
| 401K Match | | | $2.50 | | $825.80 |
| **Pre-Tax Deductions** | | | $2.50 | | $825.80 |
| 401K | | | $5.00 | | $2,804.20 |
| Med/Den/Vis Ins | | | $2.50 | | $825.80 |
| Med/Den/Vis Ins | | | $2.50 | | $302.44 |
| FSA HC | | | | | $506.01 |
| LH Drive Time Amt Offset | | | | | $1,166.62 |
| **Taxes** | | | | | $3.33 |
| Fed W/H | | | $100.85 | | $9,320.32 |
| FICA EE | | | $53.90 | | $3,341.72 |
| Fed MWT EE | | | $15.34 | | $3,089.07 |
| CA W/H | | | $3.58 | | $722.44 |
| CA DT EE | | | $25.06 | | $1,569.16 |
| **Post-Tax Deductions** | | | $2.97 | | $597.93 |
| Franchise Tax Board | | | $2.50 | | $1,591.64 |
| ROTH | | | | | $116.25 |
| AD&D EE | | | $2.50 | | $825.80 |
| Life Ins EE | | | | | $53.30 |
| Hospital Ins | | | | | $81.75 |
| Accident Ins | | | | | $163.24 |
| Critical Ins | | | | | $80.99 |
| Critical Ins Sp | | | | | $67.20 |
| Short Term Dis | | | | | $9.60 |
| **Reimbursements** | | | | | $193.51 |
| Cell Stipend | | | | 0.57 | $230.00 |
| Meal Reimbursement | | | | | $70.00 |
| | Routing # | Account # | Amount | 0.57 | $160.00 |
| **Net Pay** | | | | | Amount |
| Direct Deposit | | | $141.65 | | $38,316.02 |
| | | | $141.65 | | |

CERIDIAN

| | | |
|---|---|---|
| **Employee Name:** | Justin R Titus | |
| **Employee #:** | 016226 | |
| **Employee Address:** | | |

| | |
|---|---|
| **Pay Date:** | 7/29/2021 |
| **Pay Period:** | 7/16/2021 - 7/31/2021 |
| **Deposit Advice #:** | 411441403 |
| **Pay Frequency:** | Semi-Monthly |
| **Pay Rate:** | 26.5900 |
| **Federal Filing Status:** | HoH |
| **Federal 2c/Extra Withholding:** | No |
| **State Filing Status:** | HoH; Alt Code 02 (CA) |
| **State Exemptions:** | 1 (CA) |

| | |
|---|---|
| **Department:** | Linehaul |
| **Job Title:** | Driver |
| **Site:** | NCA/NV - 038 - STK |

**Employer Name:** Oak Harbor Freight Lines

**Employer Phone:** 800-858-8815
**Employer Address:** 1339 West Valley Hwy North
PO Box 1469
Auburn, WA 98071

**Accruals & Balances**

| | | | |
|---|---|---|---|
| PTO Balance: | 17.60 Hours | PTO Accrued: | 3.33 Hours |
| CA Covid Balance: | 80.00 Hours | | |

CERIDIAN

# EXHIBIT 4

| | | |
|---|---|---|
| **Employee Name:** | Justin R Titus | |
| **Employee #:** | 016226 | |
| **Employee Address:** | | |
| **Department:** | Linehaul | |
| **Job Title:** | Driver | |
| **Site:** | NCA/NV - 038 - STK | |

| | |
|---|---|
| **Employer Name:** | Oak Harbor Freight Lines |
| **Employer Phone:** | 800-858-8815 |
| **Employer Address:** | 1339 West Valley Hwy North |
| | PO Box 1469 |
| | Auburn, WA 98071 |

| | |
|---|---|
| **Pay Date:** | 8/6/2021 |
| **Pay Period:** | 7/16/2021 - 7/31/2021 |
| **Deposit Advice #:** | 414094325 |
| **Pay Frequency:** | Semi-Monthly |
| **Pay Rate:** | 26.5900 |
| **Federal Filing Status:** | HoH |
| **Federal 2c/Extra Withholding:** | No/$0.00 |
| **State Filing Status:** | HoH; Alt Code 01 (CA) |
| **State Exemptions:** | 1 (CA) |

| | Current 7/16/2021 - 7/31/2021 | | | YTD As of 7/31/2021 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | 2,905.77 | | $3,489.37 | 23,688.28 | $55,291.55 |
| Regular Pay | 15.67 | 26.5900 | $416.58 | 870.30 | $22,663.06 |
| LH Rest Break | 3.84 | 39.8850 | $152.94 | 21.85 | $865.88 |
| LH Work Time | 14.03 | 26.5900 | $373.15 | 105.35 | $2,774.71 |
| Holiday Pay | | | | 16.00 | $425.44 |
| Overtime | 3.98 | 39.8850 | $158.88 | 258.08 | $10,039.77 |
| Bonus | | | | | $400.00 |
| Doubletime | | | | | |
| Linehaul Miles | 2,796.00 | 0.6256 | $1,749.18 | 3.63 | $189.42 |
| Sign On Bonus | | | | 21,953.00 | $13,636.94 |
| LH Drive Time | 48.25 | 0.0100 | $0.48 | | $2,250.00 |
| CA Lunch | | | | 382.07 | $3.81 |
| PTO | | | | 5.00 | $132.95 |
| CA Covid | 24.00 | 26.5900 | $638.16 | 49.00 | $1,271.41 |
| **Memo Information** | | | $34.89 | 24.00 | $638.16 |
| 401K Match | | | $34.89 | | $860.69 |
| **Pre-Tax Deductions** | | | $153.59 | | $860.69 |
| 401K | | | $34.89 | | $2,957.79 |
| Med/Den/Vis Ins | | | $34.89 | | $860.69 |
| Med/Den/Vis Ins | | | | | $337.33 |
| FSA HC | | | | | $506.01 |
| LH Drive Time Amt Offset | | | $83.33 | | $1,249.95 |
| **Taxes** | | | $0.48 | | $3.81 |
| Fed W/H | | | $633.99 | | $9,954.31 |
| FICA EE | | | $240.54 | | $3,582.26 |
| Fed MWT EE | | | $208.99 | | $3,298.06 |
| CA W/H | | | $48.88 | | $771.32 |
| CA DT EE | | | $95.12 | | $1,664.28 |
| **Post-Tax Deductions** | | | $40.46 | | $638.39 |
| Franchise Tax Board | | | $592.12 | | $2,183.76 |
| Onemain Financial Garnishment | | | | | $116.25 |
| ROTH | | | $557.23 | | $557.23 |
| AD&D EE | | | $34.89 | | $860.69 |
| Life Ins EE | | | | | $53.30 |
| Hospital Ins | | | | | $81.75 |
| Accident Ins | | | | | $163.24 |
| Critical Ins | | | | | $80.99 |
| Critical Ins Sp | | | | | $67.20 |
| Short Term Dis | | | | | $9.60 |
| **Reimbursements** | | | | | $193.51 |
| Cell Stipend | | | | 0.57 | $230.00 |
| Meal Reimbursement | | | | | $70.00 |
| | Routing # | Account # | Amount | 0.57 | $160.00 |
| **Net Pay** | | | | | Amount |
| | | | $2,109.67 | | $40,425.69 |

CERIDIAN

| | | |
|---|---|---|
| **Employee Name:** | Justin R Titus | |
| **Employee #:** | 016226 | |
| **Employee Address:** | ▮▮▮▮▮ | |
| | | |
| **Department:** | Linehaul | |
| **Job Title:** | Driver | |
| **Site:** | NCA/NV - 038 - STK | |

**Employer Name:** Oak Harbor Freight Lines

**Employer Phone:** 800-858-8815
**Employer Address:** 1339 West Valley Hwy North
PO Box 1469
Auburn, WA 98071

**Pay Date:** 8/6/2021
**Pay Period:** 7/16/2021 - 7/31/2021
**Deposit Advice #:** 414094325
**Pay Frequency:** Semi-Monthly
**Pay Rate:** 26.5900
**Federal Filing Status:** HoH
**Federal 2c/Extra Withholding:** No/$0.00
**State Filing Status:** HoH; Alt Code 01 (CA)
**State Exemptions:** 1 (CA)

| Direct Deposit | Routing # | Account # | Amount | | Amount |
|---|---|---|---|---|---|
| | | | $2,109.67 | | |

**Accruals & Balances**

| PTO Balance: | 17.60 Hours | PTO Accrued: | 3.33 Hours |
|---|---|---|---|
| CA Covid Balance: | 56.00 Hours | | |

CERIDIAN

# EXHIBIT 5

**Employee Name:** Justin R Titus
**Employee #:** 016226
**Employee Address:** ▮

**Department:**
**Job Title:** Linehaul
**Site:** Driver
NCA/NV - 038 - STK

**Employer Name:** Oak Harbor Freight Lines

**Employer Phone:** 800-858-8815
**Employer Address:** 1339 West Valley Hwy North
PO Box 1469
Auburn, WA 98071

**Pay Date:** 10/20/2021
**Pay Period:** 10/1/2021 - 10/15/2021
**Deposit Advice #:** 431520143
**Pay Frequency:** Semi-Monthly
**Pay Rate:** 27.4000
**Federal Filing Status:** HoH
**Federal 2c/Extra Withholding:** No
**State Filing Status:** HoH; Alt Code 02 (CA)
**State Exemptions:** 0 (CA)

| | Current 10/1/2021 - 10/15/2021 | | | YTD As of 10/15/2021 | |
|---|---|---|---|---|---|
| **Earnings** | Hours/Units | Rate | Amount | Hours/Units | Amount |
| Regular Pay | | | $200.00 | 37,896.71 | $70,492.18 |
| LH Rest Break | | | | 950.76 | $24,802.68 |
| LH Work Time | | | | 34.53 | $1,371.75 |
| Holiday Pay | | | | 158.60 | $4,190.61 |
| Overtime | | | | 24.00 | $638.16 |
| Bonus | | | | 258.08 | $10,039.77 |
| Doubletime | | | $200.00 | | $600.00 |
| Linehaul Miles | | | | 3.63 | $189.42 |
| Sign On Bonus | | | | 35,695.00 | $22,233.94 |
| LH Drive Time | | | | | $2,250.00 |
| CA Lunch | | | | 614.10 | $6.13 |
| PTO | | | | 5.00 | $132.95 |
| CA Covid | | | | 73.00 | $1,909.57 |
| **Memo Information** | | | | 80.00 | $2,127.20 |
| 401K Match | | | $2.00 | | $1,012.69 |
| **Pre-Tax Deductions** | | | $2.00 | | $1,012.69 |
| 401K | | | $4.00 | | $3,597.43 |
| Med/Den/Vis Ins | | | $2.00 | | $1,012.69 |
| Med/Den/Vis Ins | | | $2.00 | | $489.33 |
| FSA HC | | | | | $506.01 |
| LH Drive Time Amt Offset | | | | | $1,583.27 |
| **Taxes** | | | | | $6.13 |
| Fed W/H | | | $80.69 | | $12,081.33 |
| FICA EE | | | $43.12 | | $3,886.52 |
| Fed MWT EE | | | $12.27 | | $4,210.26 |
| CA W/H | | | $2.87 | | $984.66 |
| CA DT EE | | | $20.05 | | $2,184.92 |
| **Post-Tax Deductions** | | | $2.38 | | $814.97 |
| Franchise Tax Board | | | $2.00 | | $3,821.49 |
| Onemain Financial Garnishment | | | | | $116.25 |
| ROTH | | | | | $1,864.46 |
| AD&D EE | | | $2.00 | | $1,012.69 |
| Life Ins EE | | | | | $74.10 |
| Hospital Ins | | | | | $114.45 |
| Accident Ins | | | | | $209.88 |
| Critical Ins | | | | | $104.13 |
| Short Term Dis | | | | | $86.40 |
| **Reimbursements** | | | | | $239.13 |
| Cell Stipend | | | | 0.57 | $270.00 |
| Meal Reimbursement | | | | 0.57 | $90.00 |

| **Net Pay** | Routing # | Account # | Amount | | Amount |
|---|---|---|---|---|---|
| Direct Deposit | | ▮ | $113.31 | | $51,261.93 |
| | | | $113.31 | | |

CERIDIAN

| | | |
|---|---|---|
| **Employee Name:** | Justin R Titus | |
| **Employee #:** | 016226 | |
| **Employee Address:** | | |

| | |
|---|---|
| **Department:** | Linehaul |
| **Job Title:** | Driver |
| **Site:** | NCA/NV - 038 - STK |

| | |
|---|---|
| **Pay Date:** | 10/20/2021 |
| **Pay Period:** | 10/1/2021 - 10/15/2021 |
| **Deposit Advice #:** | 431520143 |
| **Pay Frequency:** | Semi-Monthly |
| **Pay Rate:** | 27.4000 |
| **Federal Filing Status:** | HoH |
| **Federal 2c/Extra Withholding:** | No |
| **State Filing Status:** | HoH; Alt Code 02 (CA) |
| **State Exemptions:** | 0 (CA) |

**Employer Name:** Oak Harbor Freight Lines

**Employer Phone:** 800-858-8815
**Employer Address:** 1339 West Valley Hwy North
PO Box 1469
Auburn, WA 98071

| Accruals & Balances | |
|---|---|
| PTO Balance: | 10.25 Hours |
| CA Covid Balance: | 0.00 Hours |

CERIDIAN

# EXHIBIT 6

**Employee Name:** Justin R Titus
**Employee #:** 016226
**Employee Address:** [redacted]

**Department:** Linehaul
**Job Title:** Driver
**Site:** NCA/NV - 038 - STK

**Pay Date:** 10/22/2021
**Pay Period:** 10/1/2021 - 10/15/2021
**Deposit Advice #:** 432512940
**Pay Frequency:** Semi-Monthly
**Pay Rate:** 27.4000
**Federal Filing Status:** HoH
**Federal 2c/Extra Withholding:** No/$0.00
**State Filing Status:** HoH; Alt Code 01 (CA)
**State Exemptions:** 0 (CA)

**Employer Name:** Oak Harbor Freight Lines
**Employer Phone:** 800-858-8815
**Employer Address:** 1339 West Valley Hwy North, PO Box 1469, Auburn, WA 98071

| | Current 10/1/2021 - 10/15/2021 | | | YTD As of 10/15/2021 | |
|---|---|---|---|---|---|
| **Earnings** | Hours/Units | Rate | Amount | Hours/Units | Amount |
| Regular Pay | 723.88 | | $815.04 | 38,620.59 | $71,307.22 |
| LH Rest Break | 10.60 | 26.5900 | $281.85 | 961.36 | $25,084.53 |
| LH Rest Break | 0.67 | 39.8850 | $26.59 | 35.03 | $1,391.48 |
| LH Work Time | -0.17 | 41.1000 | ($6.86) | | |
| LH Work Time | 1.20 | 26.5900 | $31.86 | 159.13 | $4,204.17 |
| Holiday Pay | -0.67 | 27.4000 | ($18.30) | | |
| Overtime | | | | 24.00 | $638.16 |
| Bonus | 1.57 | 39.8850 | $62.49 | 259.65 | $10,102.26 |
| Doubletime | | | | | $600.00 |
| Linehaul Miles | | | | 3.63 | $189.42 |
| Sign On Bonus | 699.00 | 0.6256 | $437.29 | 36,394.00 | $22,671.23 |
| LH Drive Time | | | | | $2,250.00 |
| CA Lunch | 11.68 | 0.0100 | $0.12 | 625.78 | $6.25 |
| PTO | | | | 5.00 | $132.95 |
| CA Covid | | | | 73.00 | $1,909.57 |
| | | | | 80.00 | $2,127.20 |
| **Memo Information** | | | | | |
| 401K Match | | | $8.15 | | $1,020.84 |
| **Pre-Tax Deductions** | | | | | |
| 401K | | | $99.75 | | $3,697.18 |
| Med/Den/Vis Ins | | | $8.15 | | $1,020.84 |
| Med/Den/Vis Ins | | | $8.15 | | $497.48 |
| FSA HC | | | | | $506.01 |
| LH Drive Time Amt Offset | | | $83.33 | | $1,666.60 |
| **Taxes** | | | | | |
| Fed W/H | | | $64.02 | | $12,145.35 |
| FICA EE | | | $44.85 | | $4,255.11 |
| Fed MWT EE | | | $10.49 | | $995.15 |
| CA W/H | | | $22.81 | | $2,184.92 |
| CA DT EE | | | $8.68 | | $823.65 |
| **Post-Tax Deductions** | | | | | |
| Franchise Tax Board | | | $102.20 | | $3,923.69 |
| Onemain Financial Garnishment | | | | | $116.25 |
| ROTH | | | | | $1,864.46 |
| AD&D EE | | | $8.15 | | $1,020.84 |
| Life Ins EE | | | $10.40 | | $84.50 |
| Hospital Ins | | | $16.35 | | $130.80 |
| Accident Ins | | | $23.32 | | $233.20 |
| Critical Ins | | | $11.57 | | $115.70 |
| Short Term Dis | | | $9.60 | | $96.00 |
| **Reimbursements** | | | | | $261.94 |
| Cell Stipend | | | $10.00 | 0.57 | $280.00 |
| Meal Reimbursement | | | $10.00 | 0.57 | $100.00 |
| | | | | | $180.00 |

CERIDIAN

| | | |
|---|---|---|
| **Employee Name:** | Justin R Titus | |
| **Employee #:** | 016226 | |
| **Employee Address:** | ███████████████ | |
| | | |
| **Department:** | Linehaul | |
| **Job Title:** | Driver | |
| **Site:** | NCA/NV - 038 - STK | |

| | |
|---|---|
| **Pay Date:** | 10/22/2021 |
| **Pay Period:** | 10/1/2021 - 10/15/2021 |
| **Deposit Advice #:** | 432512940 |
| **Pay Frequency:** | Semi-Monthly |
| **Pay Rate:** | 27.4000 |
| **Federal Filing Status:** | HoH |
| **Federal 2c/Extra Withholding:** | No/$0.00 |
| **State Filing Status:** | HoH; Alt Code 01 (CA) |
| **State Exemptions:** | 0 (CA) |

**Employer Name:** Oak Harbor Freight Lines

**Employer Phone:** 800-858-8815

**Employer Address:** 1339 West Valley Hwy North
PO Box 1469
Auburn, WA 98071

| Net Pay | Routing # | Account # | Amount | | Amount |
|---|---|---|---|---|---|
| Direct Deposit | ███████████ | | $559.07 | | $51,821.00 |
| | | | $559.07 | | |

| Accruals & Balances | |
|---|---|
| PTO Balance: | 10.25 Hours |
| CA Covid Balance: | 0.00 Hours |

C
CERIDIAN